M. H. INSLEY V. ANN M. SHIRE, *as Executrix of the estate of Daniel Shire, deceased, et al.*

1. JOINDER OF ACTIONS — *Liability of Coexecutors — Partnership Accounting.* An action by an executor against a coexecutor, charging maladministration, and asking for a removal from the trust, cannot be properly joined with an action for an accounting of a partnership in which the estate has an interest with another person not connected with the estate.

2. ———— *Individual Liability.* Where an action is brought against an executor of an estate in his representative capacity, no individual liability can be established or adjudged against him.

3. ———— *Liability of Coexecutor.* As a general rule, one executor is not answerable for the neglect or bad faith of coexecutors; but where one, by his own negligence, suffers another to waste the estate, when, by the exercise of reasonable diligence, he could have prevented it, he will be held responsible for the loss.

4. EXECUTORS *as Plaintiffs.* In an action to obtain an accounting of a partnership business in which the estate is interested, all of the executors should join as plaintiffs; but where such action is brought by one alone, and the other executors are made 'defendants, and no question is raised on account of the misjoinder before judgment is rendered, the failure to name them as plaintiffs is not a fatal objection.

5. DECEDENT'S BUSINESS — *Continuance of — New Partnership.* Where the testate was in partnership with I., and there was a provision in his will authorizing the executors " to continue my present business as long as they may deem best," and the executors determined to continue the partnership business in accordance with the will, and to carry on the business upon the same terms as it was during the lifetime of the testate, *held,* that the effect of the arrangement was to create a new partnership composed of the executors of the estate on one part and of I. on the other.

6. ———— *Partnership Duties.* It is the duty of partners to devote their time and best endeavors to carry on the partnership business and promote the prosperity of the firm, and, in the absence of any special agreement between them as to the division of labor, each should give time and attention to the conduct of the business without compensation, and without regard to the relative value of the services of the several partners.

7. PARTNER, *Indifferent to Interests of Firm.* Where the partners share alike in the control and labor of the partnership business, one of them cannot sit passively by, indifferent to the interests of the firm,

and, after neglecting to use reasonable diligence himself, hold the other partner responsible to the firm for a like indifference or negligence.

8. EVIDENCE — *Opinions of Witnesses — Error.*   Where one of the main questions in issue is with respect to the negligence of those in charge of a business, it is error to admit in evidence the opinions of witnesses as to whether or not such person had exercised due diligence.

*Error from Leavenworth District Court.*

THE nature of the action and the material facts are stated in the opinion herein, filed March 9, 1895.

*William C. Hook,* for plaintiff in error; *D. M. Valentine,* of counsel.

*Eugene Hagan,* and *Hayden & Hayden,* for defendant in error Thomas, as executor, etc.

*T. A. Hurd,* for defendant in error Gaw.

*L. B. & S. E. Wheat,* for defendant in error Tullock.

The opinion of the court was delivered by

JOHNSTON, J.: In the year 1873, M. H. Insley, Daniel Shire and E. R. Kellogg formed a partnership under the firm name of Insley, Shire & Co., with a view of carrying on banking and other lines of business at Leavenworth, Kas. About a year afterward, Kellogg withdrew from the firm and Insley and Shire continued the business as equal partners, without a change in the name of the firm.   The partnership had no established capital, nor was there any fund set aside for that purpose.   Each partner deposited a certain amount of money to his personal credit, subject to be checked out by himself at will.   The two principal lines of business in which the firm was engaged was private banking, and the manufacture, construction and sale of bridges, but it also appears that they were interested in real-estate, mining and other business ventures, some of which were profitable and some unprofitable.   In June, 1882, Shire died, leaving a will, under which Ann M. Shire, James W. Gaw and Levi Wilson were appointed as executors, who were empowered to manage and

control the property of the deceased until it should be distributed in accordance with the provisions of the will, in one of which the testator authorized the executors "to continue my present business as long as they may deem best." The persons appointed duly qualified and gave a joint bond for the faithful performance of their duties, conditioned as required by law. No inventory of the partnership was made, nor were any steps taken to ascertain what the interest of the deceased was in the partnership. They did not take the partnership property into their possession, nor was it given over to the possession and control of the surviving partner. Insley gave no bond, and did not undertake the management of the partnership estate as he might have done under the statute, but the executors and Insley together determined to continue the partnership business as it had been previously carried on during the lifetime of Shire. Gaw, who was a brother-in-law of the testator, was the active executor in carrying out the provisions of the will, and from February 1, 1884, under an agreement with his coexecutors, he devoted most of his time to the partnership business, as the representative of the Shire interest, for which he was to receive $1,000 annually. He continued to act in this capacity and to receive the stipulated salary for his services until February, 1887. Heavy losses were suffered by the partnership prior to December, 1887, when a run was made upon the bank, which compelled an assignment and transfer of the property for the benefit of creditors. Soon afterward this action was brought by Ann M. Shire, as she alleges in her petition, "as well in her individual right as she does as one of the executors of the last will of Daniel Shire, deceased." It was brought against James W. Gaw and Levi Wilson, two of the executors of the last will and testament of Daniel Shire, deceased, and, also, M. H. Insley, A. J. Tullock, Samuel C. Milligan, W. H. Chaplin, and the First National Bank of Leavenworth, Kas. In her petition, she stated substantially that the defendants other than Tullock and the bank had conspired together to defraud her; that the estate has been

mismanaged; that the business of Insley, Shire & Co. had been negligently conducted, by which great loss had occurred; that the property and assets of the estate and partnership had been wasted and diverted, resulting in insolvency and business disaster. She asked for the appointment of a receiver to take possession of the property and assets of Insley, Shire & Co.; that certain transfers might be adjudged to be void, and that an accounting should be had of the partnership business, and that the partnership should be dissolved. A further prayer is that James W. Gaw and Levi Wilson should be removed from the position of executors of the estate of Daniel Shire, deceased. Insley answered, denying the wrong and mismanagement charged, as did also Gaw and Wilson. The answer of Milligan was a general denial.

After the issues were joined, the cause was referred to a referee, who, after trial, made an elaborate report of the facts and law. An accounting of the business was made, and among other facts it was found, that the plaintiff, on account of her sex and infirmities, had taken no part in the administration of the estate; that James W. Gaw was the controlling and active executor thereof; that the bridge business of Insley, Shire & Co., under the control of Tullock, had been well managed and profitable; that the banking business had been badly managed, the clerks and employés connected with the same having been negligently selected; that they had abstracted and misappropriated large sums of money, and that, from May 1, 1885, to December 6, 1887, the bank had been despoiled of $29,832.98 by and through the fraud of the employés. It was found that Insley had failed to exercise due skill, diligence and care in supervising the affairs of the bank, by reason of which great losses occurred; that at the close of the partnership business the plaintiff had overdrawn her account in the bank to the extent of $30,104.27, and that she was allowed to so improvidently overdraw her account because of the omission of Insley to keep accurate and intelligible accounts of the business. It was also found that James W. Gaw had failed to exercise ordinary care, diligence and

watchfulness in attending to the partnership business, and
had not administered the Shire estate as the law requires;
that he did not inform himself of the condition of the part-
nership business, kept no accounts, and rendered no state-
ments thereof, and that he kept no check upon the bad habits
of the employés, although he was paid a salary of $1,000
per annum for the performance of such duties. In regard
to the wrongdoing of the employés, there was an express
finding that neither Insley nor Gaw "participated in any of
the fraudulent transactions herein mentioned or in any of the
fruits thereof, nor did they have actual knowledge of the same;
but they were negligent as herein stated, and by reason of
such negligence are chargeable with such losses as herein
found." In the statement of account, the referee found, after
charging Insley with the illegal abstractions and defalcations
of employés and other losses, that there was due from him to
the partnership estate $13,465.43; that there was due from
Milligan to the partnership the sum of $34,671.89, and it
was recommended that judgment should be entered in accord-
ance with these findings; and further, that James W. Gaw
ought to be removed from his trust as executor of the Shire
estate. The report of the referee was taken up by the dis-
trict court, and upon the same evidence radical changes were
made in the findings of the referee; some were modified,
others were eliminated, and additional findings were also
made. The court materially reduced the liability of Insley,
but found that there was a joint negligence on the part of
Insley and Gaw, by reason of which they were jointly and
severally liable to the partnership in the sum of $8,555, and
the court undertook to determine as between them the indi-
vidual liability of each. Judgment was accordingly ren-
dered against them, and it was further adjudged, that the firm
of Insley Shire & Co. should recover of Milligan $39,121.42.
Judgment was rendered in favor of the other defendants, and
it was provided that the costs incurred should be paid one-
half out of the assets of the partnership, and the other by
Insley and Gaw.                                    —

Several objections are made to the findings, rulings and judgment of the trial court. It is urged that in the proceeding there is a mingling of parties and issues not in keeping with good practice nor warranted by the rules of law. There is good cause for this objection. Ann M. Shire, who is an executrix, brings an action as executrix against Gaw and Wilson as coexecutors, alleging waste and unfaithful administration, and asking that they be removed from their trusts as executors. Although she sues them only as executors, she attempts to hold them personally liable, and judgment was actually rendered against Gaw individually. In her petition she describes them as executors, and from the averments of the petition and the kind of relief which is asked against them there can be no question but that they were sued in their representative capacity. The action having been

2. Individual liability.

brought against them in that capacity, it is not competent to establish and adjudge an individual liability against them. She also brings the action in her individual capacity against the executors of the estate, but whatever this aspect of the case may count for, it does not warrant a judgment against them as individuals. The petition which she files, however, in its whole scope relates largely to partnership matters, and its main purpose appears to

1. Joinder of actions—liabilities of coexecutors—partnership accounting.

be to obtain an accounting of the partnership business. This could not be accomplished by her as an individual. It is true that she is an heir and legatee, and is therefore interested in the estate, but there are several children and other legatees who are also interested, and who are not parties to the proceeding.

No settlement of the estate has ever been made, nor does there appear to have been any order of the probate court for the payment of legacies, or the distribution of the estate. She has no right, as an individual, at this time, to bring an action in behalf of the partnership against its employés for the recovery of money due to the partnership, or for losses occasioned by their neglect or wrongdoing. Although she is jointly concerned in the execution of the trust, she brings an

action in her representative capacity against her coexecutors on account of negligence and dereliction of duty for which all were in a measure responsible. Under the law, coexecutors are to be treated as one and the same individual, and whatever each one does is to be taken as the act of all — their authority being joint and entire. (Schouler, Ex'rs, § 400.) In this case a joint bond was given, and the effect of this act was to make each executor liable for the default of the others during the continuance of the joint executorship. A separate bond might have been given by each under the statute; yet as the plaintiff chose to join with the others in the giving of the bond, she made herself liable, although she may have been without fault, for the waste and improper administration of her associates. (Schouler, Ex'rs, § 406; 7 Am. & Eng. Encyc. of Law, 216, and cases cited.)

There are cases where one executor is not answerable for the neglect or bad faith of the others, but where one, by his own negligence, suffers another to waste the estate, when, by the exercise of reasonable diligence, he could have prevented it, he will be held responsible for the loss. One of the reasons why more than one executor is appointed is, that one may watch over and correct the conduct of the other. It would hardly do to say that one who has taken upon himself the execution of a trust may, without incurring responsibility, leave the whole care of the estate upon others. Mrs. Shire, after accepting the trust, could not ignore the duties incumbent upon her and escape liability. She still retains the trust, and yet she seeks to recover against her coexecutors. As a rule, one person holding such trust relation cannot sue and recover from another in his representative capacity. "Being coexecutors, the possession of the funds of the estate by either is possession of the other, the possession being in law a joint one." And so it has been held that one executor cannot sue his coexecutor for money or property in his hands belonging to the estate of the deceased. (*Taylor v. Minton*, 45 Kas. 17.) If Gaw was guilty of bad faith, neglect, or wrongdoing, the plaintiff could

3. Liability of coexecutor.

have taken steps to have had him removed in the manner prescribed by statute, and then legatees and distributees could have required him to account for property misappropriated or for losses occurring through his maladministration. Apart from these considerations, Insley was not concerned in the controversy between the coexecutors. He was not an executor, nor did he hold any other direct trust relation to the estate. The questions of whether they acted in bad faith toward each other, and whether they were negligent toward the estate, and for that reason should have been removed from their trusts, has no proper place in the partnership accounting between Insley and those who held the other partnership interests.

There is the further contention, that the plaintiff could not maintain an action against Insley for the purpose of obtaining an accounting of the partnership business. This contention is based upon the idea that all of the executors represent the Shire interest in the partnership, and as the estate is joint and entire, the executors are to be considered in law as one person, and all of them must join as plaintiffs. This is the correct rule, and all three of the representatives of the estate should have joined in bringing the action for an accounting with Insley. (7 Am. & Eng. Encyc. of Law, 360, and cases cited; 11 Am. & Eng. Encyc. of Law, 1033.) No proper objection, however, was made on account of the nonjoinder of Gaw and Wilson, and, as they were made defendants in the action in their representative capacity, and remained in the court throughout the proceeding, while the accounting was being made, the failure to name them as plaintiffs cannot be regarded as a fatal objection. Treating the proceeding, then, as one in which all of the representatives of the estate had joined in asking an accounting of the partnership business, the question remains as to the liability of Insley. Insley and Shire, as we have seen, were equal partners. When Shire died, Insley did not give a bond and take possession of the partnership property as surviving partner, as he might have done under the stat-

4. Executors as plaintiffs.

ute.   The death of Shire operated to dissolve the partnership, but it appears that by a mutual arrangement, and in accordance with the provisions of the will, the 5. Decedent's business, continuance of—new partnership. business was continued by the executors upon the same terms as it was during the lifetime of Daniel Shire.   This arrangement had the effect of creating a new partnership, composed of the executors on one side, and Insley on the other.

Some attempt is made to hold Insley to the liability of a surviving partner under the law, but from the testimony it is clear that he was not so regarded or treated by any of the parties.  He did not assume title and control as surviving partner.   No bond was given by him; no inventory of the partnership estate was made; and he did not undertake the management of the partnership estate as surviving partner. On the contrary, all the parties united in the control and possession of the property; the executors, representing the Shire interest, and Insley, representing his own, they joined together in carrying on the business until it was discontinued.   They were partners to all intents and purposes, and all alike equally owed the duties of partners to each other.   There was no agreement for a division of labor between the executors on one side and Insley upon the other.   Insley was not employed to represent the executors or to attend to the business of the partnership for the estate.   It is true that he devoted most of his time and attention to the partnership business, but, from 1885, Gaw was employed on behalf of the estate to attend to the Shire interest in the partnership, and he received an annual salary of $1,000 as compensation for his services. There is a finding by the referee that he undertook to represent the Shire interest in the partnership, and was continuously so engaged down to the close of the bank.

The claim that Insley was general manager for the firm, and liable as such, is not sustained by the record.   While he was active in the management of the affairs of the firm, he was not appointed nor employed as manager, nor did he hold any official position which made him the representative of the

estate in the firm business.  There was no agreement that he should receive compensation as manager or agent for the firm, and none was allowed or paid.  It is true that, when the controversy arose between the parties, a credit was entered and a claim for extra services made, but as there was no such agreement it was not allowed, and it appears to have been abandoned.  So far as the partnership accounting is concerned, Insley is to be treated as a one-half owner, and the Shire estate as the owner of the other half interest.  The three executors are to be regarded as one person, and together they sustain the same relation to Insley as Shire did in his lifetime.  Insley owed them, as partners, no higher duty or any greater diligence than he would have owed to Shire under similar circumstances if he had been alive.  It was the duty of the partners to devote their time and best endeavors to carry on the business, and promote the prosperity of the partnership.  In the absence of any special agreement between them as to the division of labor, each should give time and attention to the conduct of the business without compensation, and without regard to the relative value of the services of the several parties. (Pars. Part. 3d ed. 244; 17 Am. & Eng. Encyc. of Law, 1056.) Scrupulous good faith and reasonable diligence is required from each to the other, and all losses caused by culpable neglect of duty or bad faith on the part of a partner are chargeable against him in favor of the firm.  "A fair degree of care only, however, is required.  An honest mistake of judgment, or a trivial departure from the partnership agreement in cases of emergency, will not impose the burden of the losses of the firm upon the deviating partner." (17 Am. & Eng. Encyc. of Law, 1219.)

6. Partnership duties.

A partner of equal responsibility and who himself is indifferent to his own interest or guilty of negligence, is hardly in a position to claim and recover for the entire losses resulting from the negligence of both.  In this case, the duty of carefully selecting employés and supervising the business of the partnership rested equally upon Insley and the represent-

atives of the estate; and yet we find that the entire loss resulting from the fraud and defalcation of employés was placed upon a single partner. The principal losses resulted from the action of Milligan in abstracting and purloining money from the bank. Gaw, who was giving special attention to the interests of the Shire estate, procured the employment of Milligan, who was a relative, and there is testimony that Milligan was employed and placed on the working force of the bank as the representative of the Shire estate. It was as much the duty of those representing the estate to exercise a watchful care over the conduct of Milligan and other employés as it was of Insley. The accounts which he fraudulently manipulated and the books which he falsified were under the eyes and supervision of the partners. Why, then, should Insley account for all these losses? If Shire had been alive, and had selected Milligan as an employé, and he had been guilty of frauds similar to those charged against him, and if there had been no other division of labor or responsibility between Insley and Shire than did exist while they were partners, how could Shire have claimed that Insley should bear all the losses resulting from the frauds and peculations of Milligan?

It appears that the methods by which Milligan abstracted and purloined the money of the firm were so ingenious as to almost baffle the skill of expert accountants, and several weeks were consumed by them before they were able to uncover the fraud and determine by whom the money was taken. Insley was not a bookkeeper nor an expert accountant, and no reason is seen why he should be held to a higher degree of care with respect to the books than those representing the other interests. Where partners share alike in the control and labor of business, one of them cannot sit passively by, indifferent to the interests of the firm, and after neglecting to use reasonable diligence himself, hold the other responsible to the firm for a like indifference or negligence. It does not appear that Insley had any special skill as banker, and as a partner

7. Partner, indifferent to interests of firm.

he cannot be held for the lack of skill in that respect.  His partners had a right to expect reasonable care and diligence from him in assisting to carry on the business, but they knew what his capabilities were when they entered into business with him, and therefore have no right to complain of a lack of ability or skill.  The charge of bad faith and of conspiracy with Gaw was not sustained, because there was an express finding that Insley did not participate in any of the fraudulent transactions of the employés or in any of the fruits thereof, and, more than that, that he had no knowledge of the same.  It is clear that the accounting was made upon an incorrect theory.  The liability of Insley was extended beyond what was warranted by the evidence or the law, and hence the judgment cannot be sustained.

There were some rulings upon the admission of testimony which were so erroneous as to require a reversal.  Testimony was received, over objection, that was unquestionably incompetent.  Witnesses were asked if books were kept in a certain manner, and if money was abstracted, and no examination was made to discover the fraud or robbery, could the witness say that due diligence and care were exercised by the manager? Several other questions were allowed in which the witnesses were asked, in effect, whether those in charge of the bank had exercised due diligence in its management.  Aside from the unwarranted assumptions of fact, the testimony related to a matter which was not the subject of expert testimony.  The question whether the parties were negligent was the principal point in controversy, and should have been determined from facts, and not from opinions. (*Monroe v. Lattin*, 25 Kas. 352; *Railroad Co. v. Peavey*, 29 id. 177; *Dow v. Julien*, 32 id. 578; *Solomon Rld. Co. v. Jones*, 34 id. 463.)

s. Evidence—opinions of witnesses—error.

The judgment of the district court against Insley and Gaw will be reversed, and the cause remanded for further proceedings, in accordance with the views herein expressed.

All the Justices concurring.