# Archibald J. Stinson, Appellant, v. J. L. Andrews et al., Appellees.

## Gen. No. 15,983.

1. PARTNERSHIP—*what constitutes new.* · Where the representatives of the deceased partner join with the surviving partners in carrying on the business of the firm a new partnership is created between them and the old partnership ceases.

2. ADMINISTRATION OF ESTATES—*when probate court without jurisdiction to compel accounting against surviving partner.* The probate court is without jurisdiction to compel an accounting with respect to

the affairs of a new partnership formed between the representatives of the deceased partner and the surviving partners.

3. ADMINISTRATION OF ESTATES—*when probate court without jurisdiction to compel accounting by surviving partner.*    The representatives of the deceased partner having received and approved a statement in settlement of the interest of the deceased partner in the co-partnership, cannot, after accepting such statement and acting upon it and taking possession practically of all the property of the co-partnership, go into the probate court and ask for and compel the surviving partners to make a further accounting to that court.

4. ABATEMENT—*what not former suit pending.*    Held, that a proceeding in the probate court instituted under the Administration Act to compel an accounting by a surviving partner, did not bar an action by such surviving partner for an accounting and settlement of the partnership affairs.

5. PROBATE COURT—*what not within jurisdiction.*    The probate court has no general equity jurisdiction fully to settle a co-partnership and adjust the differences between the surviving partners, etc.

Appeal from the Circuit Court of Cook county; the HON. ADELOR J. PETIT, Judge, presiding.    Heard in the Branch Appellate Court at the October term, 1909.    Reversed and remanded.    Opinion filed November 14, 1911.

## Statement by the Court.

This is an appeal from a final decree sustaining a plea filed by the defendants to the bill of complaint, and dismissing the bill for want of equity.

The verified bill shows that complainant, Archibald J. Stinson, was for a number of years a member of the firm of Stinson & Hand, which comprised himself and Nelson Hand, both of Chicago, and one Baker P. Andrews of Lincoln, Logan county, Illinois.    Written articles of copartnership were in force evidencing the partnership and its nature and scope, a copy of which is attached to the bill of complaint.    It is not necessary here to set out the partnership agreement.

In July, 1906, Baker P. Andrews died, and the defendants, F. J. Andrews, J. L. Andrews and J. D. Andrews, were and are the acting and qualified executors of his last will and testament, which was probated in the County Court of Logan county.

Nelson T. Hand, defendant, is a brother of the widow of Baker P. Andrews, deceased, and each of the executors is a son of the deceased by his first wife.

The bill shows that Stinson and Hand, the surviving partners, duly filed in the County Court of Logan county all of the inventories and appraisements required by law. It then alleges that defendant and Hand offered to close up the business of the firm but, the executors knowing the profitable business of the firm and hoping to secure large profits therefrom, proposed to complainant and Hand to continue the business and thereupon August 9, 1907, a new written co-partnership agreement with the surviving partners was made and entered into, and a copy of that agreement is attached to the bill of complaint and made a part thereof, marked Exhibit C.

By the agreement Exhibit C it is recited that whereas Baker P. Andrews, late of Lincoln, Illinois, and Stinson and Hand, both of Chicago, did under date of January 2, 1905, enter into a copartnership agreement to continue the lumber business at Summerdale in Chicago under the firm name of Stinson & Hand, which business has been under said agreement carried on and is still being carried on there, and whereas Baker P. Andrews died testate on or about July 22, 1906, leaving a last will and testament which has been duly probated in the County Court of Logan county, Illinois, of which J. L. Andrews and J. D. Andrews are the duly qualified and acting executors, and reciting that the said agreement provided that in case of the death of any one of the partners the business of the firm should be closed and settled up within one year thereafter by the survivor or survivors, and that it is the desire of the surviving partners and the said executors to continue the said agreement until January 15, 1908, without in any way altering, changing or modifying any of the other terms or provisions thereof, therefore, in con-

sideration of the mutual benefits to accrue to the said surviving partners and the estate of said deceased partner, it is thereby agreed that the said agreement of January 2, 1905, may continue in effect until January 15, 1908, at which time the partnership is to be settled and closed as provided in said agreement of January 2, 1905.

The bill then sets forth in detail the manner in which the business was conducted after the formation of the new partnership between the surviving partners and the executors of the deceased.

The bill further alleges that before the death of Baker P. Andrews, the firm had caused to be invested in timber lands situated near Citranel, Alabama, about $4,000, through the recommendation and instrumentality of the defendant Hand; that after the death of Andrews and the making of the above agreement Exhibit C defendant Hand counselled and recommended to the firm to expend, and it did expend and disburse, large sums in connection with the investment in Alabama lands, with the full knowledge, consent, permission, acquiescence and ratification of the said defendant executors; that the expenditures and outlays were for the paying off of a mortgage on said timber land and the expenditure of large sums for cutting, milling and marketing the lumber therefrom, and that the purposes of all such expenditures were well known to the said executors; and that said expenditures, including the original investment in Alabama lands, amounted on March 21, 1908, to $9,637.09.

The bill further showed that on the last mentioned date the said executors and the defendant Hand stated to the complainant that the executors had no power by reason of their representative and official capacity to engage in the business involving said Alabama lands, but could only transact a retail lumber business at Summerdale, and stated to complainant that complain-

ant and said Hand would therefore legally be bound to assume that branch of the business represented by the Alabama investments and outlays, and to take it out of the partnership transactions; that said investments were worth the full amount expended by the firm thereon, and that there were about a million feet of export lumber on the ground belonging to the firm, the export lumber being of a high grade and valuable lumber; but the complainant has since ascertained and states that at the time of the making of said representations the said executors and said defendant Hand, well knew, and it is alleged to be the fact, that the greater part of the money of said firm which had been invested in said Alabama lands had been lost and that said investment was then and there practically worthless; that said million feet of lumber was not export lumber but was practically worthless, and that said executors and said Hand conspired together, and said representations were made by them in pursuance of a conspiracy between them, to relieve the executors of their portion of the loss incurred, and for the purpose of inducing the complainant to assume the losses of the Alabama operations; nevertheless, the complainant believing the said representations to be true, and relying upon the same, and having no other knowledge than that imparted by said executors and said defendant Hand, did on March 12, 1908, make a written memorandum of agreement with said executors and said defendant Hand, reciting the fact of the copartnership formerly existing between Baker P. Andrews and the complainant and Hand to carry on a lumber business at Summerdale in the city of Chicago, made on the 2nd day of January, 1905, together with the planing mill used by the said firm, and the terms of the copartnership agreement, and the death of Baker P. Andrews, and reciting also the agreement entered into between complainant and Hand as surviving partners, and the executors, on the 9th day

of August, 1907, wherein and whereby it was agreed that the original contract of copartnership should continue in effect until the 15th day of January, 1908, and reciting that it had become impracticable and not for the best interests of the parties to the contract to settle the partnership as provided in the last named agreement, it was further agreed between said defendants J. L. and J. D. Andrews and F. J. Andrews, executors of the estate of Baker P. Andrews, deceased, and the complainant and defendant Hand, that the interest of the estate of Baker P. Andrews arising from the money so invested in the business, and profits therein, amounted to $54,115.66 on the 31st day of January, 1908, and that the interest of defendant Hand in the business, together with profits, amounted to $26,589.14, and that the interest of complainant amounted to $23,968.57, arising from the investment in the business and the profits thereof, and it was agreed that in order to equalize the capital stock as near as may be under the original agreement, each of the parties mutually agreed that the capital stock of the copartnership should be $95,874.28, that is to say, the capital invested theretofore and the profits arising from the business made the interest of Baker P. Andrews, at the time of said agreement, $47,937.14 and the capital of Hand $23,968.57 and the capital of complainant $23,968.57.    And the agreement further provided that the firm of Stinson & Hand should give to the executors of the estate of Baker P. Andrews a note for the sum of $6,178.52, and a note to the said Nelson T. Hand for the sum of $2,620.57, both of said notes to be payable on or before one year, but that the same should be paid as soon as collections could be made from the bills and accounts receivable by said firm; and that said notes were given for the purpose of equalizing the respective interests of the said partners in the business.    And it was further agreed that the state-

ment rendered by complainant and defendant Hand of
the business of the firm January 31, 1908, shows that
there was due from said firm on account of land shown
on the books, and known as southern land near Cit-
ranel, Alabama, the sum of $9,637.09, and that the
purchase of the land and the manufacture of lumber
from the timber thereon was outside the partnership
contemplated by the contract of copartnership; that
complainant Stinson and defendant Hand assumed and
agreed to pay and guarantee to the firm of Stinson &
Hand the said last named sum and interest at 6 per
cent. from January 31, 1908.   And complainant and
Hand agreed on their part to convert all the assets in
connection with the land, including the land if neces
sary, and all timber, lumber mills, wagons and other
property purchased in relation to the same into cash as
soon as possible; and that if any profit arose from the
sale of the land and the personal property it was to be-
long to complainant and Hand.   It was further agreed
that complainant and Hand should collect as fast as
possible, keeping in view the payments of the bills and
accounts payable by the firm of Stinson & Hand, all
bills and accounts receivable, and apply the same as far
as possible on the payments of said notes agreed to be
given.    It was further provided in the agreement that
complainant and Hand should devote all their time and
attention to the business, and that they should render
to the executors of the estate of Andrews a true and
correct statement of each month's business, at the end
of the month.    And it was further agreed between the
parties that on the last of each month during the time
the contract was in force complainant, and defendant
Hand, and the executors of the estate of Baker P. An-
drews, should each draw the sum of $250 per month,
commencing on the 31st day of March, 1908, and that
said $250 was to be drawn from the profits of the busi-
ness, and was to be in full compensation and satisfac-

tion of all claims and demands of each of the parties for services in conducting or in any manner carrying on the business, and at the end of the year, to-wit, January 31, 1909, when the profits or losses arising from the business were ascertained, if the business showed a profit in excess of the said $250 per month to be paid to each of the parties, the profits should be distributed to the partners in equal parts, and if the business should show a loss then each of the parties to the agreement agreed to pay one-third of such loss, it being understood and contemplated by the contract that complainant, and Hand, and said executors of the estate of Baker P. Andrews, were each entitled to an equal one-third of the profits, and each to share one-third of the loss, if any.

It was further agreed that the declaration of trust theretofore made by Baker P. Andrews, deceased, on August 10, 1905, in relation to the ownership of the real estate upon which said lumber business was conducted, and the interests of the complainant, and Hand, which are set forth in the declaration of trust, should be subject to the payment of the notes in the agreement provided for, namely, one note for $6,178.52, and a note of $2,620.57 given to the defendant Hand, and complainant and Hand agreed that the executors of the estate should hold the title and the interest of the parties subject to payment of the notes.    The agreement further recited that it appearing that the complainant Stinson is indebted to the firm in the sum of $4,000 together with interest thereon, it was agreed that complainant and his wife were to execute a note therefor payable to the firm, and that the payment of the same was to be secured by mortgage on certain premises then occupied by complainant and his wife as a homestead; and as further security for the payment of the note to the firm it was agreed by complainant that his interest in the said premises on which the business was

conducted should be retained as security for the payment thereof; subject, however, to the lien created in the contract for the payment of the note of $6,187.52 given to the Andrews estate.    The agreement further provided that it should commence on the 31st day of January, 1908, and continue in force for one year or until January 31, 1909.

The bill further avers that the complainant did not know whether the executors had caused to be entered by the County Court of Logan county, any orders authorizing them to make the two agreements above re-ferred to, or either of them, or any other agreement relative to the copartnership.    The bill further shows that the defendant Hand was since the death of said Andrews indebted to the executors upon separate personal account, the exact nature of which is unknown to the complainant, but which the complainant believes is for money borrowed from Andrews in his lifetime; that the executors knowing the defendant Hand was entitled to a share of the assets of the firm upon dissolution, and having fraudulently induced the complainant to join with Hand to guarantee the firm indemnity from loss by reason of the Citranel land venture, on or about May 1, 1908, the exact date being unknown to the complainant, secured from defendant Hand a full transfer and assignment of his right, title and interest in the firm, which was of the approximate value of $20,000, and thereupon, for the purpose of further defrauding the complainant repeatedly solicited and urged the complainant to make a full settlement and adjustment between himself and defendant Hand, thus attempting to eliminate Hand from the partnership and leave the partnership affairs to be adjusted solely by the complainant, and thereby intending to have the complainant release Hand and bear alone the entire amount of the loss through the Citranel venture; and up to that time the executors had made no

disclosure to the complainant regarding the new assignment and transfer; but complainant refused to make any such settlement with Hand; whereupon the said executors stated to the complainant that they would refuse to make any settlement of the partnership affairs whatever which would fail to hold complainant for the entire amount of the Citranel land deal loss, being approximately $15,000; and that at the same time they would apply all interest of the defendant Hand in the said firm in the liquidation of the personal account between said Hand and the executors, for which said assignment and transfer was made as security, and for which the executors held other valuable securities.

The bill then avers that subsequent to the making of the last agreement above referred to the firm of Stinson and Hand continued to do a large business, but that by reason of the general financial panic existing throughout the United States at that period, resulting in low value for lumber and large decrease in the value of the stock on hand as well as a restricted market for the same, the profits of the business during the year 1909 were largely reduced, but that the good will of the firm remained unimpaired, and promised to be a highly valuable asset as soon as the panic had passed, and that on or about April 20, 1909, the said defendant executors, without any authority whatsoever, and in violation of their agreement with the complainant, proceeded to take personal charge of the entire business of the said firm for the purpose apparently of winding up its affairs; that they appointed one W. A. Irvine of Lincoln, Illinois, as their representative in Chicago, who took exclusive charge of the office of the firm, and its books and records and affairs generally, and thenceforth complainant was refused a voice in the running of the business or its management; and the funds of the firm were placed on deposit so that the

complainant could not draw against them, but they were made subject to the exclusive order of said Irvine, and the business of the firm was thereafter in general run with a total disregard of the complainant or his rights.

The bill avers that for the year prior to August 15, 1909, the business of the firm showed a large profit, approximately $10,000; that the firm during said period purchased spruce and fir lumber to the amount of one million five hundred thousand feet at prices about three dollars a thousand below the market, upon which said firm could have realized a large profit, but that the defendant executors without any authority, and without the consent of the complainant, cancelled the contract of purchase and refused to receive the lumber, and so deprived the firm of profits exceeding $5,000.

The bill of complaint avers that the complainant at all times gave his careful and conscientious attention to the business of the firm and devoted all his time thereto, and in all respects he performed his duties as required of him in the interests of said firm and of the partners, but that since the fore part of the year of 1909, the said defendant executors have wholly violated their duties towards the complainant; that they have treated the firm and its property as their own private property in which they regarded the interest of the complainant solely such as they saw fit to give him; that they have refused to permit the complainant to take any active part in the management of the business and have restricted his activities to those of a mere clerk and salesman; that they have refused to permit him to have any voice in the firm or to consult him in making purchases or sales in which the firm was vitally interested; that they have uniformly dictated the policies of the firm and have cancelled large orders which would have netted the firm large profits; that

they have instructed said Irvine to look out solely for the interests of said executors and have paid him out of the treasury of the firm, and have refused the complainant the right to draw against the account of said firm or make any collections on its behalf, and have treated themselves as self-appointed receivers and refused to permit the complainant to hold or control any part of the assets; that they have caused Irvine to make out, at the firm's expense, numerous statements, inventories and appraisals of the firm's assets and properties, as well as its liabilities, but have refused on the demand of complainant to give him the benefit and use thereof, although Irvine was ostensibly in the employ of the firm and was being paid out of the firm moneys; that they have refused to make any account or any division on any equitable basis of the assets of the firm, practically all of which were in their possession.

The bill avers that at the time of the making of the last mentioned contract of March 12, 1908, the complainant and his wife joining, executed and delivered a note for $4,250, payable to the firm, secured by a mortgage, as provided by the said agreement, and that the said note and mortgage are still in the possession of the firm.

The bill alleges that the executors, on August 16, 1909, without any authority, permission or acquiescence on the part of complainant, or of the defendant Hand, so far as complainant knows, sent out broadcast to all customers and friends of the firm a notice to the following effect:

You are hereby notified that the firm of Stinson & Hand has been dissolved and that all the accounts due the firm are in the hands of W. A. Irvine for collection.    No other person is authorized to collect except him and no receipts will be good unless signed by him.

This notice was signed Stinson & Hand by I. B. Craig.    Complainant avers that he did not consent

or knowingly permit at any time the said Irvine to handle the accounts of the firm for collection, and that complainant does not know and cannot ascertain what right or authority the said I. B. Craig had to sign or deliver any notice of the kind and character above described, but avers that Craig is a member of the law firm of Craig & Kinzel of Lincoln, Illinois, and has been the personal attorney and counsel of said executors and has at all times acted and is now acting solely on behalf of the executors, and has repeatedly on behalf of the executors solely, conferred with the complainant regarding the affairs of said business.

The bill alleges that the complainant has repeatedly within the last six months advised the executors of the necessity of keeping the firm's business intact and disposing of it, if disposition was necessary, as a going business concern, and has pointed out on numerous occasions that the firm possessed a good will which was of great value; but notwithstanding such advice and information the defendant executors have used every means in their power to destroy the good will of the firm, have violated contracts for the purchase of lumber as above set forth and, by means of cancellation of orders sent in the name of Craig & Kinzel, attorneys, produced the effect on the lumber world that the firm was insolvent and bankrupt, and have reduced the stock of the firm so that orders for the purchase of lumber from the firm could not be filled and have thereby accustomed the customers of the firm to go elsewhere for the purchase of lumber, and defendant executors have belittled on every occasion the position of the complainant with the firm, so that its customers refuse to have further dealings with him, although he had been for many years the prinicipal manager of the firm, and that they have used all the means known to them to throw discredit upon the dealings and methods of the firm and thereby greatly reduced the value and worth of its good will and business.

The bill then shows the assets of the firm, both real and personal, in a general way, amounting to upwards of $100,000, and also the liabilities, and that the liabilities do not exceed $30,000, so that the firm is solvent, but the executors have treated the assets of the firm as their sole individual property and have administered the same for their own exclusive benefit and in accordance with their own whims and caprices.

The bill further shows that on August 10, 1909, the complainant collected moneys due to the said firm, amounting to $3377.46, which the complainant immediately reported to the bookkeeper for entry on the books, and which he retained as a credit on his account to be charged against him on the books of the firm; that the course of action of the executors has tied up all the money of the complainant in said firm and has kept complainant in need of cash, and that the complainant's purpose in collecting and ordering the moneys credited as aforesaid was simply to enable him to provide necessary living expenses and expenses of litigation until the distribution of the assets of the firm, and to prevent the executors from starving the complainant into submission to any terms they might see fit to impose. That the executors demanded of the complainant the return of the moneys at once, to avoid trouble, which the complainant has refused to do. And that aside from said moneys thus collected by him all the assets of said firm of every name, nature and description are in the sole custody and control of said executors, in violation of the rights of complainant.

It is then averred that on August 20, 1909, the executors caused to be served on the complainant a copy of a rule issued August 27, 1909, out of the County Court of Logan county, Illinois, directing complainant and said defendant Hand to be and appear before said court on September 2, 1909, to show cause why a full settlement of said copartnership should not be made, and why complainant should not turn over to

apply on partnership debts, said sum of $3377.46 collected by him, and to show cause why the complainant should not account for and pay over to the executors such sum as should be due them after the payment of partnership debts, and why complainant and Hand should not give security for the faithful performance and settlement of said partnership and that in default thereof a receiver should be appointed for said partnership property and effects.

The bill avers that while said proceeding is, under the circumstances set out in the bill, contrary to law, yet if complainant is obliged to answer said citation or rule he will be put to great inconvenience and expense, and that a restraining order should be issued out of this court restraining the prosecution of said rule and the further institution or prosecution of any proceedings whatsoever which will in any way interfere with the administration of said partnership assets in this court, until the further order and direction of the court.

The bill then sets up that from time to time complainant has applied to said executors and to said Hand and requested them to give a full and fair account in respect to the partnership transactions, all of which they have absolutely refused to do; and in particular said executors have steadfastly taken the position that there was nothing to divide, and that the complainant ought simply to allow them to take over all the partnership assets and treat them as their own; but complainant avers that the share of complainant will amount to upwards of fifteen thousand dollars, and that upon an accounting damages should be awarded in favor of complainant against said executors by reason of the method in which they have handled the assets, as in the bill set forth, and that they should be made to bear a large sum proportionate to the loss incurred, as well as their proportion of the Citranel loss; that a receiver be appointed to conserve

said estate and collect and hold its assets on behalf of all the parties interested; and the bill avers that no one of said executors nor said Hand consents to join the complainant in bringing the bill, but refuses so to do.

The bill then makes the executors and Hand parties defendant, and prays for a complete answer, waiving the oath, and that the copartnership of Stinson and Hand may be declared dissolved; that an account may be taken of all the dealings and transactions together with the moneys received and paid out; that a receiver may be forthwith appointed to collect and impound the assets of the partnership and administer the same under the direction of the court; that upon an accounting the moneys or properties in the hands of the receiver may be directed to be paid to the parties entitled thereto; that any deficiency due any of the parties may be ordered paid by the party from whom such deficiency is owing, complainant being ready, able and willing to pay all moneys which may be found due from him; that the affairs of the firm may be fully settled, and that upon an accounting the court may ascertain what, if any, damages have resulted to the firm by reason of the illegal and unauthorized acts of the defendants, or some of them, and that such damages may be set off against their interest in the firm, and that the court may declare rescinded the agreement of complainant to be holden for one-half of the loss of said Citranel venture; that the loss may be borne equitably between the defendants; that an injunction may issue restraining the further prosecution of said rule issued out of the County Court of Logan county, and restraining the institution or prosecution of any other or different proceedings which may in any wise interfere with the administration of the estate in this proceeding; and, that the complainant may have such other relief as equity may require and to the court may seem meet.

The bill is sworn to by the complainant.

To this bill a plea was filed on behalf of all the de-

fendants on September 14, 1909. It alleges that on the 22nd of July, 1906, Baker P. Andrews died in Lake county, Illinois, and that soon after his death his last will and testament was filed in the Probate and County Courts of said county, and was duly admitted to probate; that by said last will J. L., F. J. and J. D. Andrews were appointed executors and that they gave bond for the faithful performance of their duties and duly qualified as such executors; that from time to time they have made reports of their acts and doings; that at the time of the death of said Baker P. Andrews the complainant Stinson and the defendant Hand were carrying on a lumber business in Summerdale, Cook county, as partners of said Baker P. Andrews, and that said Stinson and Hand, as surviving partners, filed their inventory of assets and liabilities of said partnership in said County Court; that on August 27, 1908, said executors filed in said court a petition alleging the fact that said firm had failed and neglected to make settlement of its business as required by statute and that said Stinson had collected from the assets of said firm $3377.46 and had appropriated the same to his own use and refused to apply it on partnership debts, and that the firm owed at that time approximately $30,000, and that he had abandoned the said property and refused to do anything towards closing it up and disposing of it, and praying that said Stinson might be cited to appear and answer said petition and show cause why said moneys so collected by him should not be applied upon the partnership debts, and also that said Hand, the surviving partner, left in possession of the firm property, should not give bond to close up said estate, and in case of his failure or neglect to do so that a receiver thereof should be appointed, and that said County Court of Logan county might direct that the affairs of the said firm should be wound up and the property of said firm be converted into cash and divided according to the interests of the respective

parties; that on August 27, 1909, said County Court issued a rule upon said Stinson and Hand directing them to answer the petition by September 2, 1909, and show cause why a full settlement of said partnership should not be made; that thereafter on August 30, 1909, said rule was served upon said Stinson and said Hand by the sheriff of Cook county, and was duly returned to said County Court and filed; and defendants aver that said cause is now pending and undetermined in said County Court of Logan county and was pending and undetermined before the petition in this case was filed in this court, and that the County Court of Logan county had jurisdiction of said subject-matter and of the person of the complainant; all of which matters the defendants aver to be true, and plead the same to the whole of said bill and demand judgment of the court whether they ought to be compelled to make answer to said bill, and pray to be dismissed with their costs, etc.

The plea is supported by the affidavit of Jesse D. Andrews, one of the defendants.

Upon the filing of the bill a motion was immediately made, on due notice, for the appointment of a receiver and the issuance of a temporary restraining order, according to the prayer of the bill. This motion was continued from time to time by the court until the 21st day of September, 1909. In the meantime the foregoing joint plea was filed by the defendants.

On September 21, 1909, the Circuit Court refused to take up the motion of the complainant for an injunction and the appointment of a receiver until after it had passed upon the plea, and thereupon considered the plea, which it sustained, and dismissed the bill for want of equity.

ELMER H. ADAMS, DWIGHT S. BOBB and ASA G. ADAMS, for appellant.

CRAIG & KINZEL, for appellees; ROSS C. HALL and WILLIAM H. HOLLY, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The question presented is, does the plea set up a complete defense to the bill?

The proceedings in the County Court of Logan county, the pendency of which is set up in the plea, were instituted under sections 88 and 89 of the Administration Act. The contention of the defendants is that the citation which they caused to be issued out of that court directing the respondents to answer their petition constituted a former action pending with reference to the cause of action or controversy set forth in the bill of complaint, in a court of general and complete jurisdiction, with reference to the matter of the settlement of the copartnership. It is urged on the other hand that this position is untenable because the present existing partnership of Stinson and Hand is a partnership subsisting between complainant, Nelson T. Hand and the defendant executors of the last will and testament of Baker P. Andrews, deceased, and is not a copartnership in process of liquidation, between Stinson and Hand and the deceased, Baker P. Andrews. And a further contention is made that the County Court has power and jurisdiction only to compel an accounting by a surviving partner and the payment of the balance found due on the accounting. It is without jurisdiction to wind up and settle a partnership. The statute is for the exclusive benefit of the executors or administrators of a deceased partner and gives no remedies to the surviving partner.

The bill shows that the original partnership agreement was made January 2, 1905, between Baker P. Andrews, Nelson T. Hand and the complainant, and that this partnership agreement contained a provision that in case of the death of any of the partners the business

should be closed and settled up within one year thereafter by the survivor or survivors.

It appears from the bill that Baker P. Andrews died July 22, 1906, leaving a will in which he nominated the defendants as executors of his will, and that the will was duly probated in the County Court of Logan county.   It further appears from the bill that August 9, 1907, a contract was entered into between the complainant and the defendants, J. L. and J. D. Andrews, as executors of the will of Baker P. Andrews, and the defendant Nelson T. Hand, not for the purpose of winding up the business in accordance with the original contract but for the express purpose of continuing the business until January 15, 1908.   At the time of making this agreement of August 9, 1907, the year had expired in which, by the statute and the original contract of copartnership, the copartnership business was to have been closed, and the estate settled.

It further appears from the bill that subsequently on March 12, 1908, J. L. Andrews, J. D. Andrews, F. J. Andrews and the defendant Hand, and the complainant Stinson, entered into a contract which recited that on January 31, 1908, the complainant Stinson and the defendant Hand had rendered an account to said executors whereby it appears that the interests in the said business of the respective parties were as follows: A. J. Stinson, $23,968.57, the estate of Baker P. Andrews, $54,115.66, Nelson T. Hand, $26,589.14, and that an accounting was had between the complainant and defendant Hand as surviving copartners, and the executors of the estate of Baker P. Andrews, the deceased partner, and that the interests of the various partners were arrived at, and the interest of the estate was also stated.

This contract then provides for a new equalized capitalization of the business, and recites in figures the interest of each of the parties, and provides for the giving to the estate of Baker P. Andrews a note for the

sum of $6,178.52 by Stinson and Hand, and a note to the defendant Hand for the sum of $2,620.57, both of said notes being payable in one year, but that the same should be paid as soon as collections could be made from the bills and accounts receivable of the firm. In and by that agreement a disposition of the investment in the Alabama lands near Citranel was made whereby the complainant and the defendant Hand were to take over the investment at the sum of $9,637.09, and were to pay to the firm of Stinson & Hand, that amount of money with interest, and providing that should any profit arise from the sale of the land it should be and become the personal property and profit of said complainant and the defendant Hand.

The agreement further provides that on the last day of each month during which the contract was in force the complainant Stinson, the defendant Hand and the executors of the estate of Baker P. Andrews should each draw the sum of $250 per month, commencing on the 31st day of March, 1908; that this monthly payment was to be in full compensation and satisfaction of all claims and demands of each of the parties for services in conducting and carrying on the business and should be taken from the profits of the business; and at the end of the year, on January 31, 1909, when the profits or losses arising from the business were ascertained, if the business showed a profit in excess of the said $250 per month that was to be paid to each of the parties signing the contract, the profit should be distributed to each of the partners in equal parts, and if the business showed a loss each of the said parties agreed to pay one-third of the loss, it being understood and contemplated that the complainant, Stinson, the defendant, Hand, and the executors of the estate of Baker P. Andrews were each entitled to an equal one-third of the profits and were each to share one-third of the losses, if any.

In that agreement it was provided that the declara-

tion of trust made by Baker P. Andrews on the 10th day of August, 1905, in relation to the ownership of the real estate upon which said lumber business was conducted in Chicago, and the interests of said complainant and defendant Hand, should be subjected to the payment of the notes above mentioned given in accordance with the contract; and it was agreed that the executors of the Andrews estate should hold the title and the respective interest of each of the parties, subject to the payment of these notes; and the complainant agreed to convey to one of the executors of the Baker P. Andrews estate any real estate that might be in his name, in trust for the firm of Stinson & Hand.

In that agreement provision was also made for an indebtedness of the complainant to the firm of $4,000 with interest; and it was provided that complainant and his wife should execute a note payable to the firm and secure the same by a mortgage on certain premises, set forth in the bill.    After this agreement was made according to the bill, the defendant executors participated in the management of the business for a time, and then assumed entire charge of it, excluding the complainant from the management.

It seems clear we think that this contract constituted a copartnership agreement between the parties signing it, and that in the agreement there is involved specifically a complete statement and accounting of all the interests of all the parties, including the interest of the Baker P. Andrews estate, in the copartnership, and that the effect of the agreement is a settlement and accounting by the surviving partners of the original copartnership with the executors of Baker P. Andrews, and the turning over to the executors of Baker P. Andrews of the interest which the estate had in the old copartnership; and not only that, but on the basis of that accounting and restatement of the interests of the parties according to the state of the business at that time, a new copartnership was formed providing as above

stated for monthly compensation for each of the parties and a division of the profits, and also contribution for losses, if any, on the new basis.

Where the representatives of a deceased partner join with the surviving partners in carrying on the business of the firm, the weight of authority is that a new partnership is created between them and the old copartnership ceases.    In Woerner on the American Law of Administration, (2nd Edition) 281, the learned author says:

"The death of any member of a firm operates its dissolution as to all, unless by the articles of copartnership or other agreement between the partners it is otherwise stipulated.    These agreements are however to be looked upon as bargains for the creation of a new partnership when the old one ceases to exist, since the partner who has died cannot possibly continue a member of the firm, and though his executors or children become members yet it cannot be the same firm as that of which he was a member."

McGrath v. Cowen, 57 Ohio State, 385, was an action brought by Owen McGrath against Catherine Cowen individually and as executrix of the will of her deceased husband, to dissolve a partnership existing between the parties and for the appointment of a receiver to take charge of the assets and wind up its affairs.    At page 401, of the opinion, the court say:

"There can be no doubt that upon the death of James Cowen the partnership between him and McGrath was immediately dissolved and the exclusive possession and control of its entire assets became vested in the survivor for the purpose of closing up its affairs; so that if no partnership relation was thereafter entered into by McGrath there was none to be dissolved, nor any occasion for an application by him for a receiver. * * * As a partner cannot possibly continue to be a member of a firm after his death any agreement with his executor or other person having a beneficial interest in the share of the estate which be-

longed to him, for the continuation of the business thereafter with the surviving partner, is necessarily the formation of another partnership. * * * And as to all arrangements or contracts which may be made between the surviving partners and the representatives or appointees of the deceased have for their effect only the formation of a new partnership, which upon some terms or other takes the stock and carries on the business of the old one.   Parsons on Partnership, Sec. 343.''

In Insley v. Shire, 54 Kans. 793, there was involved the question as to whether a new partnership had been formed between the surving partners of the firm of Insley, Shire & Co. and the executors of Shire, a deceased member of the firm.   The court say at page 801:

''The death of Shire operated to dissolve the partnership, but it appears that by mutual arrangement and in accordance with the provisions of the will the business was conducted by the executors upon the same terms as it was during the lifetime of Daniel Shire.   This arrangement had the effect of creating a new partnership composed of the executors on one side and Insley on the other.''

To the same effect are, the Exchange Bank v. Tracy, 77 Mo. 594, and Sternberg v. Larkin, 58 Kans. 201.

We have reached the conclusion that the agreement of March 12, 1908, was a copartnership agreement, with some hesitation, because of a contrary holding by the Appellate Court of the Third District in J. J. Andrews and others, Executors v. A. J. Stinson and others.   It appears from the opinion of that court (164 Ill. App. 25) that the proceedings alleged to have been pending in the Logan County Court, set up in the plea in this case, were by the Logan County Court dismissed for want of jurisdiction and thereupon an appeal was taken to the Circuit Court of that county, and the ruling of the County Court was reversed, and on appeal to the Appellate Court of the

Third District the ruling of the Circuit Court was affirmed.

In the opinion of the Appellate Court in that case it is held that the contract of March 12, 1908, did not form a new copartnership distinct from the old firm, and therefore that the County Court had jurisdiction to compel an accounting.

With all due deference to the holding of the Appellate Court of the Third District we are compelled to reach a different conclusion, holding that by the agreement of March 12, 1908, a new copartnership was formed for the purpose of continuing the business between the surviving partners and the executors of Andrews, deceased, and that for that reason the County Court of Logan county had no jurisdiction to compel the complainant to render an account in a partnership where there was no deceased member, and, therefore, the plea does not set up a defense to the bill of complaint.

This holding as to the agreement of March 12, 1908, is entirely apart from the provision in the fourth paragraph of Andrews' will, which does not appear in the record now before us, but, in the opinion of the Appellate Court for the Third District it appears that the record before the court in that case contained a copy of Andrews' will, and in the fourth paragraph thereof the deceased expressed "the desire and direction that his executors should continue the lumber business for five years, and gave them power to discontinue old and form new partnerships." If the will of Andrews authorized the executors to continue the lumber business and to form new partnerships there can be no question as to the authority and power of the executors to enter into the agreement of March 12, 1908.

If, however, the agreement in question is not to be construed as a copartnership agreement it must be held to be a full statement and accounting, between the surviving partners and the executors, and a settle-

ment of the affairs of the old firm, and that such settlement is conclusive upon the defendant executors. Sage v. Woodin, 66 N. Y. 578; Sternberg v. Larkin, *supra.*

The defendant executors, having thus received and approved the statement and settlement of the interest of the deceased in the copartnership, of which their testator was a member, cannot after accepting such a statement and acting upon it, and taking possession practically of all of the property of the copartnership, as shown by the averments of the bill, go into the County Court and ask for and compel the surviving partners to make a further accounting to that court.

A further objection to the plea as a defense to the bill of complaint is that the statute under which the proceedings therein set up were instituted, gives no power to the County Court to wind up a partnership. It simply authorizes county courts to require an accounting from the surviving partners to the representatives of the deceased partner as to the latter's interest in the firm for the purpose of administering his estate.   It provides a direct and speedy remedy to the executors or administrators of a deceased partner to compel the surviving partner to honestly and speedily account for and pay over the interest of the deceased in the firm to the executors; and while the County Court has general equity powers for the purpose of compelling the accounting, it has no general equity jurisdiction to fully settle the copartnership and adjust the differences between the surviving partners and the interests of the estate.   It affords no remedy and confers no right upon anyone except the executors or administrators of deceased members of the firm.   The surviving partners can claim no equities as between themselves, nor secure any remedies in that proceeding except in the mere matter of settling the interest of the deceased member of the firm in the partnership assets.

The second section of the act under which the pro-

ceedings set up in the plea were instituted provides that in case of the committal of waste by the surviving partner or partners the court may upon a verified application by the executor or administrator protect the estate of the deceased partner by citing the survivor to give security for the faithful settlement of the affairs of the copartnership, and for an accounting and payment of whatever may be found due thereon after the payment of all partnership debts and costs of settlement; and in case the survivor refuses to give such security the court may appoint a receiver with like powers as receivers in chancery; but we see nothing in this section that clothes the County Court with concurrent equity jurisdiction with the general jurisdiction of the Circuit Court.  The whole provision is conditional and applies in case waste has been committed by the surviving partner.  In case the surviving partner has not committed waste this section gives no right of proceeding or remedy; and assuming that waste has been committed by the surviving partner the statute merely requires the giving of a bond by the survivor to faithfully account and settle the affairs of the partnership.  Upon the giving of such bond the power of the court ceases and a halt in the proceedings occurs.

It is contended with much zeal, on behalf of the appellees that the County Court is the court of concurrent jurisdiction with a court of equity for the settlement of copartnership affairs, and that the County Court having first obtained jurisdiction of the subject-matter of the settlement of this copartnership the Circuit Court would not interfere; and many authorities are cited upon a proposition to which it is idle to cite authorities, as neither the rule of law invoked nor the authorities are applicable to this case as we view it.

We think therefore that upon the ground that the County Court of Logan county has not the general equity jurisdiction necessary to settle matters and is-

sues set forth in the bill of complaint, involving among other things the setting aside of the arrangement made with reference to the Alabama lands on the ground of fraud and misrepresentation, and other issues which are presented by the bill, and need not again be stated, the plea of the defendants to the bill does not set up a defense and should have been overruled.

With the consequences of the action of the executors in entering into the agreements with the surviving partners which they appear by the bill to have entered into, or with their accounts as executors in the Probate Court, we have nothing to do and are in nowise concerned.    If they have exceeded their authority as executors in making the contract set up in the bill, and have made themselves liable to the heirs or the estate, those questions are beside and apart from the questions presented in this case and are not involved herein.

The decree of the Circuit Court is therefore reversed and the cause is remanded.

*Reversed and remanded.*